Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties in a Pre-Trial Agreement prior to hearing before the deputy commissioner as
 STIPULATIONS
1. Employee is Norman Dale Duke.
2. Employer is Carolina Crane Corp.
3. The employer is self-insured and the servicing agent is Key Risk Management Services.
4. Defendant-Employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and the employee on the 27th day of September 1995, the alleged day of the injury.
5. The parties agree that the average weekly wage was $797.14 on the alleged date of injury and this sum yields a compensation rate of $478.00 on September 27, 1995.
6. The parties agree that employee sustained an injury by accident arising out of and in the course of his employment with the employer on September 27, 1995.
7. The issues to be heard are:
Employee contends:
(a) Chiropractic Care
(b) Second opinion with Dr. Dimmig
(c) Change of medical care to Dr. Dimmig
 (d) The issue of Temporary Total Disability has been reserved for later hearing.
 Employer contends the only issue to be heard is whether employee is entitled to medical compensation for chiropractic care subsequent to February 18, 1996.
8. The parties stipulate that the following documents a-c are admitted into evidence, as to (d) and (e) plaintiff admits he was provided copies of these on November 19, 1996, but objects because he cannot cross examine the maker of the records and those who provided input.
(a) Medical Records from Dr. Nelson (10 pages)
(b) Medical Records from Dr. Williams (18 pages)
(c) Medical Records from Dr. Dimmig (13 pages)
 (d) Utilization review procedures of Berkeley Care Network (Plaintiff objects)
 (e) Documents from Berkeley Care Network concerning utilization review and peer review, obtained from Dr. Eugene Lewis, D.C. (Plaintiff objects).
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 40 years old and certified as a welder. He did not have an antecedent history of significant low back problems prior to the September 27, 1995 date in question.
2. In approximately January of 1995 plaintiff became employed by defendant-employer as a working foreman, whose duties included both welding and rigging work and involved him working at different work sites.
3. Because defendant-employer was then engaged in a large amount of demolition work, plaintiff's job not only involved lifting sixty-five to seventy percent of the time, but heavy lifting of unlimited weight, which he can no longer do because of the work-related low back injury on September 27, 1995. The welding work that plaintiff also did as part of his working foreman's job, however, did not involve the same type of heavy lifting.
4. In the process of lifting an oxygen cylinder at a job that defendant-employer was doing in Raleigh on September 27, 1995 plaintiff sustained the admittedly compensable low back injury that was subject of defendant-employer's Form 60 Employer's Admission of Employee's Right to Compensation benefits.
5. Upon notifying his supervisor of the involved back injury plaintiff was directed to see a physician and returned home to Roxboro where he came under the care of Dr. Dale Williams, a chiropractor, on September 28, 1995.
6. Because defendant-employer did not direct him to a particular physician, plaintiff was free to select his own and defendant-employer was obligated to bear the costs of the same treatment so long as it was reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen any period of disability associated with plaintiff's low back injury. The chiropractic treatment plaintiff received did provide temporary relief of plaintiff's symptoms.
7. Defendant-employer initially authorized Chiropractor Williams' treatment, but subsequently referred plaintiff to a medical doctor, Dr. Michael Wilkerson, and he provided a conservative course of treatment, including physical therapy, which did not significantly improve plaintiff's condition.
8. Ultimately defendant-employer referred plaintiff to an orthopedic surgeon, Dr. J. Leonard Nelson of Raleigh Orthopedic Clinic, who initially saw him on December 12, 1995 and continued a conservative course of treatment, including additional medication and an exercise program. Because plaintiff was continuing to experience incapacitating pain when he returned to Dr. Nelson for re-evaluation on January 3, 1996, Dr. Nelson not only scheduled a diagnostic MRI, but took him out of work altogether to see if that would improve his symptoms, which it did not.
9. Despite his incapacitating low back pain, which was aggravated by the heavy lifting required by his regular working foreman's job, plaintiff was able to continue regularly working for defendant-employer until Dr. Nelson took him out of work on January 3, 1995. He thereafter began receiving benefits under defendant-employer's Form 60 Employer's Admission of Employee's Right to Compensation.
10. Upon returning to Dr. Nelson on January 17, 1995 after undergoing the diagnostic MRI, Dr. Nelson released plaintiff to return to his regular job without restriction and did not anticipate he would retain any permanent partial disability from the involved back injury. At the time he attempted to return to his regular working foreman's job on January 18, 1996, however, plaintiff was continuing to experience incapacitating low back pain from his September 27, 1995 back injury and had not reached maximum medical improvement and/or the end of the healing period from the same injury.
11. He was initially assigned to a welding job at Raleigh-Durham Airport, which did not involve the type of heavy lifting that he had been doing sixty-five to seventy percent of the time prior to his injury and did not aggravate his back pain as much. After a week there, however, plaintiff was reassigned to a job at Duke Hospital remodeling a room that involved lifting and carrying a lot of heavy items out of a small door. The heavy lifting significantly aggravated plaintiff's existing low back pain.
12. On the last date, plaintiff worked for defendant-employer, March 8, 1996, he was assigned to a job at a printing business in Raleigh moving printing presses weighing seven to eight thousand pounds a piece. Jacks had to be used to raise the printing presses and then timber was placed under the presses to move them. Plaintiff was required to lift jacks and timbers weighing fifty to sixty pounds over a ten-to-twelve hour period aggravating his existing back pain. Although he was scheduled to return to work there on Saturday, plaintiff's back pain was so severe that he could not get out of bed the next day and return to work.
13. Because he had been released from Dr. Nelson's care and was continuing to experience incapacitating back pain when he attempted to resume his regular working foreman's job on January 18, 1996, plaintiff returned to the same chiropractor that had initially treated him following his injury.
14. Defendant-employer, through its servicing agent, initially agreed to authorize additional chiropractic treatment during the period from January 17, 1996 through February 18, 1996, but refused to authorize the same chiropractor's request for an additional twelve chiropractic visits over a two month span based on a peer review of the recommended treatment by another chiropractor, through a managed care group, Berkley Home Care.
15. Since defendant-employer did not offer to provide plaintiff with alternate treatment and had initially authorized his receipt of additional chiropractic treatment; and, the same treatment was reasonably designed to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's low back injury, defendant-employer was obligated to bear the expense of the additional chiropractic treatment that plaintiff received from February 18, 1996 up until April 25, 1996.
16. Because he was not receiving any lasting relief from his chronic incapacitating pain, plaintiff elected to stop chiropractic treatment on April 25, 1996 and to obtain a second opinion from another orthopedic surgeon as Dr. Nelson had suggested at the time of releasing him from his care. Plaintiff subsequently sought a second opinion in July of 1996 from Dr. Thomas Dimmig of Durham's Triangle Orthopedic Associates.
17. Although he did not seek prior authorization for a second opinion, defendant-employer would have allowed him one if he requested it and ultimately did seek the Industrial Commission's authorization for a change of medical care to Dr. Dimmig less than two months later.
18. In February of 1997 plaintiff returned to Dr. Dimmig for re-evaluation. As a result of the length of time that had elapsed since his injury and the fact that his symptoms were unchanged, plaintiff was no longer in need of further conservative medical treatment such as physical therapy or prescription medication, which were unlikely to dramatically affect his condition.
19. Other than over the counter medications and a change of lifestyle so as to avoid jobs requiring the type of heavy lifting that significantly aggravated his existing low back pain as plaintiff has attempted to do since last working for defendant-employer on March 8, 1996; the only other treatment alternative for chronic incapacitating back pain is an aggressive one involving invasive back surgery such as a spinal fusion, which would necessarily result in an extended period of recovery.
20. The only reason to even consider any of the additional diagnostic testing described by Dr. Dimmig in his testimony and stipulated medical records is to determine the exact nature of his problems and whether the same problems can be surgically corrected; however, all of that is based on the premise or assumption that plaintiff is willing to undergo the type of invasive surgery potentially involved and that Dr. Dimmig recommends surgery after additional diagnostic testing. If plaintiff is unwilling to undergo invasive surgery, but rather, is able to tolerate his symptoms without surgery; there is no need to have him undergo additional diagnostic testing, whose only purpose is to determine whether he is a surgical candidate. On the other hand if plaintiff is willing to undergo invasive back surgery that is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with his incapacitating back pain; then it is reasonable for him to undergo the additional diagnostic testing proposed by Dr. Dimmig to determine whether he is a surgical candidate. Therefore, prior to requiring defendant-employer to bear the expense of additional diagnostic testing, it is not unreasonable to require plaintiff to indicate that he is willing to undergo corrective back surgery if after testing Dr. Dimmig finds him to be a candidate for it. It is also not unreasonable for plaintiff to have an opportunity to return to Dr. Dimmig for re-evaluation to discuss the types of surgery potentially involved, including as part thereof, the risk and benefits thereof, before deciding whether to undergo surgery.
21. Without surgery, however, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the injury by accident giving rise hereto by the time he was last evaluated by Dr. Dimmig on February 27, 1997, at which time he retained a five percent permanent partial disability of the back as a result of the same injury.
22. Because of the low back injury sustained on September 27, 1995 plaintiff has remained unable to return to his regular working foreman's job since March 8, 1996, or other work similarly involving heavy lifting where he was capable of earning the same wage; but rather, has only been capable of alternate lighter work, primarily involving welding, where he is unable to earn the same wage he did at the time of his injury entitling him to compensation for the resulting diminution in his wage earning capacity based on two-thirds of the difference between the $797.14 average weekly wage he was able to earn as working foreman for defendant-employer and the $664.44 average weekly wage he has since been able to earn doing lighter work based on his $14,500 in earnings during the twenty-two and a half week period following March 8, 1996. Plaintiff's compensation rate for partial disability would be $101.81 per week.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the September 27, 1995 back injury giving rise hereto plaintiff has remained partially disabled since March 8, 1996 entitling him to compensation at a rate of a $101.81 per week from March 8, 1996 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains partially disabled, subject to a change of condition, medical or employment; provided, however, the same benefits are payable for a maximum of 300 weeks from the date of injury and are also subject to plaintiff making an election between the more munificent remedy of either receiving continuing partial disability benefits under G.S. 97-30 after the February 27, 1997 date he reached maximum medical improvement and/or the end of the healing period from and following the involved back injury without back surgery in the event he is unwilling to undergo invasive back surgery after being re-evaluated by Dr. Dimmig, or to accept benefits for the five percent permanent partial disability of the back he sustained from the same back injury. N.C. Gen. Stat. § 97-30.
2. Without corrective back surgery on February 27, 1997 plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the September 27, 1995 low back injury giving rise hereto, at which time he retained a five percent permanent partial disability of the back entitling him to select the more munificent remedy of compensation at a rate of $478 per week for a period of fifteen weeks from February 27, 1997 for his resulting five percent permanent partial disability of the back or continuing partial disability benefits under the provisions of G.S. 97-30 for the balance of the 300 weeks following February 27, 1997. N.C. Gen. Stat. § 97-31(23).
3. For the reasons stated in the above findings of fact, defendant-employer is obligated to pay the chiropractic expenses that plaintiff incurred during the period from February 18, 1996 to April 25, 1996 and the costs of Dr. Dimmig's two evaluations as well as the additional evaluation required by Dr. Dimmig to assist plaintiff in determining whether he is willing to undergo invasive back surgery in the event Dr. Dimmig determines he is candidate for surgery after undergoing additional diagnostic testing. N.C. Gen. Stat. § 97-25.
4. To the extent plaintiff is willing to undergo invasive back surgery and is determined to need surgery after undergoing the additional diagnostic testing proposed by Dr. Dimmig, the same surgery is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with his incapacitating low back injury; therefore, defendant-employer is obligated to provide any necessary surgery as well as the above-referenced additional evaluation by Dr. Dimmig in the interim regarding the potential nature, risk and benefits of any surgery in order to assist plaintiff in determining whether he is willing to undergo it. Plaintiff should further notify the Industrial Commission and defendant-employer within thirty days of the date he is re-evaluated by Dr. Dimmig as to whether he is willing to undergo invasive back surgery.
5. Defendant-employer is obligated to pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of his compensable back injury.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer shall pay plaintiff, on account of his partial disability, compensation at a rate of $101.81 per week from March 8, 1996 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains partially disabled, subject to a change of condition, medical or employment; provided, however, the same benefits are payable for a maximum of 300 weeks from the September 27, 1995 date of injury and are also subject to plaintiff electing the more munificent remedy of continuing to receive the balance of the 300 weeks due under G.S.97-30 after the February 27, 1997 date he reached maximum medical improvement and/or the end of the healing period from and following the injury by accident without undergoing back surgery in the event he subsequently declines to undergo back surgery or compensation at a rate of $478 for fifteen weeks following February 27, 1997 for the resulting five percent permanent partial disability of the back he retains from the involved back injury. If, however, plaintiff is willing to undergo invasive back surgery, the additional diagnostic testing by Dr. Dimmig indicates he is a candidate for surgery and the same surgery is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, plaintiff is entitled to continuing partial disability benefits up until the time he is admitted for surgery or should Dr. Dimmig earlier take him out of work, but still for a maximum of 300 weeks from the date of injury. Plaintiff would be entitled to temporary total disability compensation during any period he is unable to work. Such compensation as has accrued under the above Award shall be paid in a lump sum, without commutation, subject to a reasonable attorney's fee hereinafter approved.
2. At this time a reasonable attorney's fee in the amount of twenty-five percent of the accrued compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto by defendant-employer. For the balance of his fee defendant-employer shall forward every fourth compensation check payable hereunder to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant-employer shall pay all reasonable and necessary medical expenses incurred or to be incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof, not only the additional chiropractic treatment he received from February 18, 1996 to April 25, 1996 and the two evaluations by Dr. Dimmig in September of 1996 and February of 1997, but his subsequently being evaluated by Dr. Dimmig to assist him to determine whether he is willing to undergo invasive back surgery and; if so, the costs of the additional diagnostic testing that Dr. Dimmig recommends to determine whether he is a candidate for back surgery as well as the cost of surgery if he is, when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendant-employer shall bear the costs, including as part thereof, the expert witness fees previously awarded herein.
IT IS FURTHER ORDERED that within 30 days hereof, or as soon thereafter as the same can be arranged, plaintiff shall schedule a further evaluation at defendant's expense by Dr. Dimmig to assist him in determining whether he is willing to undergo surgery by discussing the potential nature, risk and benefits thereof. Within 30 days of the date he is re-evaluated by Dr. Dimmig, plaintiff shall advise the Industrial Commission and defendant-employer of whether he is willing to undergo invasive back surgery; if so, then defendant-employer shall arrange for him to undergo the additional diagnostic testing to determine whether he is a surgical candidate. If plaintiff is not; plaintiff shall have thirty days thereafter to elect benefits under N.C. Gen. Stat. §§ 97-30 or 97-31.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER